01

02

03

04

05              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
06                     AT SEATTLE

07 JAMES A. BOYD,                    )    CASE NO. C05-0020-JLR
                                     )
08          Plaintiff,               )
                                     )
09     v.                            )
                                     )    REPORT AND RECOMMENDATION
10 JOSEPH LEHMAN, et al.,            )
                                     )
11          Defendants.              )
   _____  )

12

13              INTRODUCTION AND SUMMARY CONCLUSION

14          Plaintiff is a state prisoner who is currently incarcerated in the Washington State

15 Reformatory Unit ("WSRU") of the Monroe Correctional Complex ("MCC") in Monroe,

16 Washington.  He brings this action under 42 U.S.C. § 1983 to allege that defendants violated the

17 First and Fourteenth Amendments to the United States Constitution, the Washington State

18 Constitution, and the Religious Land Use and Institutionalized Person Act ("RLUIPA") when they

19 denied him his religiously mandated diet and caused him to receive his evening meal before sunset

20 at the beginning of Ramadan in 2004.  Plaintiff identifies the following individuals as defendants

21 in this action:  Joseph Lehman, Secretary of the Department of Corrections ("DOC"); Dan

22 Williams, Religious Program Manager for the DOC; and Linda Haptonstall, Chaplain for the

REPORT AND RECOMMENDATION
PAGE -1

01  Washington State Reformatory Unit of the MCC.  Plaintiff seeks declaratory and injunctive relief,

02  and damages.

03       Defendants have filed a motion for summary judgment.  Plaintiff has filed a brief in

04  opposition to defendants' motion, and defendants have filed a reply brief in support of their

05  motion.  This Court, having reviewed defendants' motion, and the balance of the record,

06  concludes that defendants' motion for summary judgment should be granted and plaintiff's

07  complaint, and this action, should be dismissed with prejudice.

08                                         <u>FACTS</u>

09       Plaintiff is a Muslim inmate who has been incarcerated at MCC since May 2004[1].  (Dkt.

10  No. 40, Attachment A.)  Prior to 2002, Muslim inmates in the DOC were provided with a non-

11  pork diet.  (Dkt. No. 39, Ex. 7. at 1.)  The non-pork diet was one of 14 different diets provided

12  by the DOC to accommodate a variety of religious and medical needs.  (*Id*.)  In 2002, the mainline

13  diet was made pork-free, and the 14 diet plans were consolidated into six plans that effectively met

14  the religious and medical needs of all inmates.  (*Id*., Ex. 4 at 1-2.)

15       According to plaintiff, defendant Haptonstall, in July 2004, authorized plaintiff to receive

16  the kosher diet in an effort to accommodate his religious dietary requirements.  (Dkt. No. 50 at

17  7.)  However, plaintiff was only provided kosher meals for about two weeks.  *Id*.; *see also*, Dkt.

18  No. 40, Ex. 2 at 3.)  The practice of providing kosher meals to Muslim inmates was stopped

19  because it greatly increased food costs and, according to the DOC, was not necessary to meet the

20  nutritional and religious requirements of Muslim inmates. (Dkt. No. 40, Ex. 2 at 3.)  Thereafter,

21

22

---

[1] It appears from the record that plaintiff, who has been in Washington Department of Corrections custody since 1992, was also incarcerated at MCC from July 2001 to April 2002.

REPORT AND RECOMMENDATION
PAGE -2

01 an ovo-lacto vegetarian diet was authorized for Muslim inmates. (*Id.*) Defendants contend that

02 the ovo-lacto vegetarian meals are nutritionally adequate and meet the religious requirements for

03 Muslims. (*See id.*) Plaintiff contends that the non-meat diet violates Muslim religious practices

04 and is discriminatory. (Dkt. No. 7 at 3.)

05      Also at issue in this action are events which transpired during the month of Ramadan in

06 2004. The first day of Ramadan 2004 was October 15, 2004. (Dkt. No. 40, Ex. 3 at 2.) Islamic

07 law requires that Muslims abstain from all food and drink during daylight hours for the entire

08 month of Ramadan. (Dkt. No. 39, Ex. 6 at 7.) Accordingly, arrangements were made to provide

09 inmates participating in Ramadan a hot morning meal before the period of fasting began. (Dkt.

10 No. 40, Ex. 3 at 2.)

11      Arrangements were also made for inmates participating in Ramadan to be called to the

12 dining hall with the last group to eat their hot evening meal.[2] (*Id.*) However, this plan resulted

13 in the Muslim inmates being served their evening meal before sunset, which was not acceptable.

14 David Sherman, head chaplain at MCC, became aware of the timing problem regarding the

15 evening meal on approximately October 17, 2004, and took steps to rectify it. (*Id.*) The problem

16 was solved by allowing inmates to take their trays back to their cells with them. (*Id.*) Because

17 of the rapid effort to rectify the problem, plaintiff was served his evening meal prior to sunset on

18 only the first three days of the month of Ramadan in 2004.

19 / / /

20 / / /

21

22     [2] At the time of their evening meal, Muslim inmates were also provided with a supplemental sack lunch to be consumed sometime after the evening meal. (Dkt. No. 40, Ex. 3 at 2.)

REPORT AND RECOMMENDATION
PAGE -3

01 DISCUSSION

02 Summary Judgment Standard

03    Summary judgment is proper only where "the pleadings, depositions, answers to

04 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

05 genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

06 of law." Fed.R.Civ.P. 56(c).  The moving party has the burden of demonstrating the absence of

07 a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257

08 (1986).  Genuine disputes are those for which the evidence is such that a "reasonable jury could

09 return a verdict for the nonmoving party."  *Id.*  Material facts are those which might affect the

10 outcome of the suit under governing law. *Id.*

11    In response to a properly supported summary judgment motion, the nonmoving party may

12 not rest upon mere allegations or denials in the pleadings, but must set forth specific facts

13 demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the

14 existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e).  A mere scintilla of

15 evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252.  In ruling on

16 a motion for summary judgment, the court is required to draw all inferences in a light most

17 favorable to the non-moving party. *Id.* at 248.  The court may not weigh the evidence or make

18 credibility determinations. *Id.*

19 First Amendment Violation

20    The First Amendment guarantees the right to the free exercise of religion.  However, the

21 Supreme Court has noted that the free exercise right "is necessarily limited by the fact of

22 incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain

REPORT AND RECOMMENDATION
PAGE -4

01 prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  In order to establish a free

02 exercise violation, a prisoner "must show the defendants burdened the practice of his religion, by

03 preventing him from engaging in conduct mandated by his faith, without any justification

04 reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736

05 (9th Cir. 1997)(citing *Turner v. Safley*,  482 U.S. 78, 89 (1987)).

06       As the Ninth Circuit explained in *Freeman*, "[i]n order to reach the level of a constitutional

07 violation, the interference with one's practice of religion 'must be more than an inconvenience; the

08 burden must be substantial and an interference with a tenet or belief that is central to religious

09 doctrine.'" *Id.* at 737 (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)).

10 *1.    Religious Diet*

11       Plaintiff alleges that defendants have violated his First Amendment right to free exercise

12 of his religion by denying him his preferred religious diet.  Plaintiff contends that defendants have

13 created a policy which forces Muslim inmates to eat ovo-lacto vegetarian meals.  Plaintiff asserts

14 that he is not a vegetarian, and that defendants' refusal to serve him either halal meat or kosher

15 food burdens the practice of his religion.

16       Defendants argue in their motion for summary judgment that plaintiff cannot show a

17 violation of his First Amendment rights with respect to his religious diet because there is no

18 requirement that Muslims consume meat.  In support of this argument, defendants have offered

19 the declarations of defendant Williams and of Brannon Wheeler, a Distinguished Professor of

20 History and Politics, and Director of the Center for Middle East and Islamic Studies at the United

21 States Naval Academy.  (Dkt. No. 40, Ex. 2; Dkt. No. 39, Ex. 6.)  Defendants have also offered

22 the deposition testimony of plaintiff's expert, Twahiru Mohammed.  (Dkt. No. 39, Ex. 5,

01   Attachment B.)  Each of these individuals states essentially the same thing; *i.e.*, that while Islamic

02   law forbids Muslims to eat certain foods, there are no mandated foods, such as meat.

03        Plaintiff, in his response to defendants' summary judgment motion, argues that halal meat

04   is a required part of the Muslim diet.  Plaintiff bases this argument on the fact that the Quran

05   nowhere states that Muslims are, or should be, vegetarians, and on the fact that the Quran

06   instructs Muslims to eat that which Allah has made lawful, which includes certain meats.  ( *See*

07   Dkt. No. 48 at 19-21.)  Plaintiff has provided the Court with excerpts from the Quran which he

08   believes support his argument that the eating of meat is required.  In addition, he has submitted

09   the declarations of Chaplain Twahiru A. Qadir, who is identified as a contract chaplain at the

10   Washington State Reformatory, and Imam Makram El-Amin, who both state essentially the same

11   thing; *i.e.*, that Muslims are  commanded by God in the Quran to consume meat.[3]  (*See* Dkt. No.

12   50, Ex. A at 1-2, 9-12.)

13        Plaintiff further argues in his response to defendants' summary judgment motion that the

14   fact that his beliefs regarding what the Quran requires are different from what Twahiru

15   Mohammed or Professor Wheeler interpret the Quran to require does not defeat First Amendment

16   protections.  (Dkt. No. 48 at 22.)  Plaintiff contends that the relevant inquiry in determining

17   whether his beliefs are entitled to First Amendment protection is not whether, as an objective

18   ─────────────────

19   [3] Plaintiff has actually submitted two declarations of Chaplain Twahiru A. Qadir.  It
     appears that the chaplain, who purportedly signed the declarations offered by plaintiff, and
20   Twahiru Mohammed, the expert deposed by defendants' counsel, are actually the same individual.
     (*See* Dkt. No. 48 at 14-15 n. 3)  The Court notes that the "evidence" provided to the respective
21   parties by this individual appears to be inconsistent.  The Court further notes that the two
     declarations submitted by Chaplain Twahiru A. Qadir both bear signatures, but that the signatures
22   on the two declarations, though similar, are not identical.  At this stage of the proceedings, this
     Court has no way of knowing whether the chaplain did, in fact, execute either of these
     declarations.

REPORT AND RECOMMENDATION
PAGE -6

01    matter, his beliefs are accurate or logical, but, instead, whether the beliefs which he professes are

02    sincerely held and are, in his own scheme of things, religious. (Dkt. No. 48 at 13.)  Plaintiff relies

03    upon the United States Supreme Court's decision in *United States v. Seeger*, 380 U.S. 163 (1965),

04    to support this contention.

05          Plaintiff also relies upon the United States Supreme Court's decision in *Thomas v. Review*

06    *Board of the Indiana Employment Security Division*   , 450 U.S. 707 (1981), to support his

07    argument that it is his own belief system, and not the interpretation of the Quran offered by others,

08    which is controlling.  In *Thomas*, the Supreme Court stated that "[t]he determination of what is

09    a "religious" belief or practice is more often than not a difficult and delicate task . . . .  However,

10    the resolution of that question is not to turn upon a judicial perception of the particular belief or

11    practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible

12    to others in order to merit First Amendment protection."  *Id*. at 714.

13          The Court, in *Thomas,* went on to note that "intrafaith differences . . . are not uncommon

14    among followers of a particular creed, and the judicial process is singularly ill equipped to resolve

15    such differences in relation to Religion Clauses."  *Thomas*, 450 U.S. at 715.  The Court further

16    noted that "the guarantee of free exercise is not limited to beliefs which are shared by all of the

17    members of a religious sect," and that "[c]ourts are not arbiters of scriptural interpretation."  *Id*.

18    at 715-16.

19          This authority appears to make clear that where, as here, plaintiff claims to believe that

20    eating halal meat is central to the practice of his religion, and defendants do not challenge the

21    sincerity of that belief, the belief is entitled to First Amendment protections.  Accordingly, the

22    Court turns to the next part of the analysis which is to consider whether defendants' decision to

REPORT AND RECOMMENDATION
PAGE -7

01   deny plaintiff halal meat and/or kosher meals as a part of his religious diet is rationally related to

02   a legitimate penological purpose.[4]  *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. The Estate*

03   *of Shabazz*, 482 U.S. 342 (1987).

04        In *Turner*, the Supreme Court identified four factors that must be considered when

05   determining whether a prison regulation that impinges on inmates' constitutional rights is

06   reasonably related to legitimate penological interests:

07        First, there must be "'a valid, rational connection' between the prison regulation and
          the legitimate governmental interest put forward to justify it."  Second, whether there
08        are "alternate means of exercising the right that remain open to prison inmates" must
          be assessed.  Third, "the impact accommodation of the asserted constitutional right
09        will have on guards and other inmates, and on the allocation of prison resources
          generally" must be determined.  Fourth, "the absence of ready alternatives" to the
10        regulation must be explored.  The "existence of obvious, easy alternatives may be
          evidence that the regulation is not reasonable."

11

12   *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993) (quoting  *Turner*, 482 U.S. at 89 (citations

13   omitted)).

14        The Supreme Court has made clear that a reviewing court "must accord substantial

15   deference to the professional judgment of prison administrators, who bear a significant

16   responsibility for defining the legitimate goals of a corrections system and for determining the most

17   appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  The

18   Supreme Court has also made clear that the burden is not on the state to provide the validity of

19

20        [4] This Court was previously presented with a similar claim regarding the Muslim religious
      diet by another inmate at MCC.   *See Turnbow v. Lehman*, C04-2510-JCC.  Based upon the
21    evidence and arguments presented by the parties in *Turnbow*, this Court concluded that the inmate
      had not demonstrated that the defendants had burdened the practice of his religion by preventing
22    him from engaging in conduct mandated by his faith, and the Court therefore did not reach the
      *Turner* analysis.

REPORT AND RECOMMENDATION
PAGE -8

01 a challenged regulation, but is instead on the inmate to disprove it. *Id.*

02      Under the first *Turner* factor, the Court must consider whether there is a legitimate

03 penological interest behind the policy which authorizes the ovo-lacto vegetarian diet for Muslim

04 inmates. The Ninth Circuit has recognized that prisons have "a legitimate penological interest in

05 running a simplified food service, rather than one which gives rise to many administrative

06 difficulties." *Ward*, 1 F.3d at 877 (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)). The

07 Court, in *Ward*, also noted that "the policy of not providing special diets is related to simplified

08 food service." *Id.*

09      Cheryl Johnson, the Food Service Program Manager for the Department of Corrections,

10 has provided a declaration in support of defendants' summary judgment motion. (Dkt. No. 39,

11 Ex. 7.) In her declaration, Ms. Johnson states that the DOC currently maintains six diet plans

12 which effectively meet the religious and medical needs of all inmates. (*Id.*, Ex. 7 at 1-2.) She

13 explains that this represents a substantial reduction in the number of diet plans maintained prior

14 to 2002, and states that this simplification of the food preparation process significantly reduced

15 the number of labor hours devoted to the food preparation process.[5] (*Id.*, Ex. 7 at 2.) Ms.

16 Johnson also states in her declaration that "[a]ll special meals create increased demands on staff"

17 and that "[p]reparing a few meals for a few inmates is typically as labor intensive as preparing and

18 distributing food in large quantities." (*Id.*)

19      Plaintiff counters defendants' assertions regarding the impact on the food preparation

20 process of adding halal meat to the Muslim religious diet with the declaration of a fellow inmate,

21

22     [5] Ms. Johnson describes this reduction in terms of "FTEs." This Court assumes that this is a reference to "full time equivalents" which is essentially a measurement of the number of labor hours required to accomplish a given task.

REPORT AND RECOMMENDATION
PAGE -9

01  Edward Pettit.  (Dkt. No. 50, Ex. A at 6-8.)  Mr. Pettit states that he is assigned to the inmate

02  kitchen at WSRU where he prepares special diets for the inmate population.  (*Id.*, Ex. A at 6.)  He

03  opines that adding an item such as halal meat to the ovo-lacto vegetarian diet would not adversely

04  impact his efficiency in preparing the special diets. (Dkt. No. 50, Ex. A at 7-8.)

05           Even assuming, as Mr. Pettit suggests, that the addition of halal meat would not increase

06  the amount of preparation time required in the kitchen, Mr. Pettit's assessment does not take into

07  account the full impact of adding another menu component.  Presumably, the addition of a

08  specialized menu item also requires additional administrative time for purposes of menu planning

09  and procurement of food items.  All of these tasks complicate the process to some extent.

10  Because prisons have a legitimate interest in running a simplified food service, and because

11  providing a specialized diet which incorporates halal meat would necessarily complicate that

12  process to some extent, there is a connection here between the policy of providing Muslim inmates

13  the mainline ovo-lacto vegetarian diet, rather than a diet which includes halal meats, and a

14  legitimate penological interest.

15           Plaintiff suggests as an alternative that he be provided kosher meals.  The Court presumes

16  that the kosher meal is one of the six meals already being provided by the DOC.  Thus, substituting

17  the kosher diet for the ovo-lacto vegetarian diet for Muslim inmates should not unduly complicate

18  the food service process.  The issue with respect to substituting the kosher diet is one of cost.

19  Plaintiff acknowledges that limiting costs is a legitimate correctional goal.

20           Ms. Johnson explains in her declaration that kosher meals must be prepared in a separate

21  kitchen with separate utensils, and that those meals are therefore prepared off-site by an outside

22  vendor.  (Dkt. No. 39, Ex. 7 at 2.)  Ms. Johnson states that kosher meals cost two to three times

REPORT AND RECOMMENDATION
PAGE -10

01  as much as mainline meals such as the ovo-lacto vegetarian meal. (*Id.*) Because substituting the

02  kosher meal for the ovo-lacto vegetarian meal for Muslim inmates would necessarily increase

03  costs,  there is a connection between the policy of providing Muslim inmates an ovo-lacto

04  vegetarian diet, rather than a kosher diet, and a legitimate penological interest.

05        For the foregoing reasons, this Court concludes that the first *Turner* factor weighs in favor

06  of defendants. *See Ward*, 1 F.3d at 877.

07        Under the second *Turner* factor, the Court must consider whether there are alternative

08  means of exercising the right at issue.  In *Turner*, the Supreme Court stated that "[w]here 'other

09  avenues' remain available for the exercise of the asserted right, courts should be particularly

10  conscious of the 'measure of judicial deference owed to corrections officials ... in gauging the

11  validity of the regulation.'" *Turner*, 482 U.S. at 90 (citations omitted).  In *Ward*, the Ninth Circuit

12  explained that the relevant inquiry with respect to the second *Turner* factor "is not whether the

13  inmate has an alternative means of engaging in the particular religious practice that he or she

14  claims is being affected; rather, we are to determine whether the inmates have been denied all

15  means of religious expression." *Ward*, 1 F.3d at 877 (citing *O'Lone*, 482 U.S. at 351-52.)  Thus,

16  the question this Court must consider is whether plaintiff has alternate ways to practice his religion

17  generally, not whether he has an alternate way to obtain meat.

18        Defendants have submitted evidence which establishes that Muslim inmates are provided

19  many alternative ways to exercise their religious rights.  Muslim inmates are given time off of work

20  to celebrate two major holidays;  *i.e.*, Eidul-Fitr and Eidul-Adha.  (Dkt. No. 40, Ex. 3 at 1-2.)

21  Special meals are provided to Muslim offenders on these days and they are permitted to meet

22  together to celebrate. (*Id.*)  At MCC, accommodations are made for the five daily required

REPORT AND RECOMMENDATION
PAGE -11

01  prayers and, in addition, Muslim inmates are permitted to congregate every Friday for the Jum'ah

02  service.  (*Id.*, Ex. 3 at 2.)

03       In addition, it appears that the staff at MCC has made a substantial effort to ensure that

04  those inmates who observe Ramadan are able to participate in Ramadan activities.  Among the

05  accommodations made for Muslim inmates during the month of Ramadan are times set aside each

06  day for morning and evening prayer, an evening prayer/study time, allowing inmates to fast during

07  daylight hours, and providing a feast after the 30 days of fasting have been completed.  (Dkt. No.

08  40, Ex. 3 at 2.)  Finally, defendants note that MCC has a Muslim contract chaplain to assist in the

09  religious practice and instruction of Muslim offenders, and that education classes or other activities

10  are often held for Muslim inmates on Saturdays.  (Dtk. No. 40, Ex. 3 at 2.)

11       Plaintiff argues that there are no alternative ways for him to exercise his right to eat halal

12  meat.  However, as noted above, the test under the second *Turner* factor is much broader than

13  plaintiff suggests.  The record establishes that Muslim inmates at MCC are provided many

14  alternative means of practicing their religion and that substantial accommodations are made to

15  ensure that Muslim inmates are able to participate in significant rituals of their faith.  For these

16  reasons, the second *Turner* factor weighs substantially in favor of defendants.

17       Under the third *Turner* factor, the Court must consider the impact that accommodation

18  of the asserted right will have on staff and on prison resources generally.  Defendants assert that

19  providing halal meat would impose a burden on food service preparation and on the numbers of

20  staff required to prepare the meals, and could potentially increase security concerns if contracting

21  with additional vendors became necessary.

22       As noted above in the Court's consideration of the first *Turner* factor, defendants have

REPORT AND RECOMMENDATION
PAGE -12

01  established that the addition of another specialized meal to those already provided by the DOC

02  necessarily complicates the food service process to some extent.  However, the Court has yet to

03  address the precise impact on staff and prison resources of adding halal meat to the Muslim

04  religious diet.

05          Defendants have established, generally, that simplification of the food preparation process

06  reduces the amount of man hours that must be devoted to that process.  (*See* Dkt. No. 39, Ex. 7

07  at 1-2.)  Defendants have not, however, offered any evidence to establish that the addition of halal

08  meat to the Muslim religious diet will, in fact, necessitate the hiring of additional staff.  And,

09  though defendants assert that the use of alternate vendors would increase security risks,

10  defendants offer no proof that alternate vendors would even be necessary.  Thus, this assertion is

11  speculative at best.  Finally, the Court notes that while adding special halal meat to the menu

12  would likely increase costs to the DOC, there is no evidence establishing what those costs would

13  be.

14          Defendants have not provided sufficient evidence to establish that incorporating halal meat

15  into the Muslim religious diet would necessitate hiring additional staff, would increase security

16  risks, or would substantially increase the costs of the religious meals provide to Muslim inmates.

17  Accordingly, to the extent plaintiff requests that he be provided halal meat as a part of his religious

18  diet, the third *Turner* factor weighs in favor of plaintiff.

19          The Court must also consider the third *Turner* factor in relation to plaintiff's alternative

20  request that kosher meals be substituted for ovo-lacto vegetarian meals as a means of

21  accommodating his asserted right to a diet which satisfies Islamic dietary laws as he understands

22  them.  Substituting kosher meals for ovo-lacto vegetarian meals is unlikely to have a significant

01  impact on staffing requirements because the kosher diet is already being provided by the DOC to

02  some inmates.  However, as noted above in the Court's analysis of the first        *Turner* factor,

03  defendants have established that substituting kosher meals would substantially increase costs to

04  the DOC.  Accordingly, to the extent plaintiff requests that he be provided kosher meals to

05  accommodate his religious dietary needs, the third *Turner* factor weighs in favor of defendants.

06         Finally, under the fourth *Turner* factor, the Court must consider whether there are

07  alternatives to the DOC's policy which would accommodate plaintiff at a *de minimis* cost to the

08  DOC.  The Supreme Court has stated that "the absence of ready alternatives is evidence of the

09  reasonableness of a prison regulation" and that "the existence of obvious, easy alternatives may

10  be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison

11  concerns."  *Turner*, 482 U.S. at 90-91 (citations omitted).

12         Defendants asserts that providing ovo-lacto vegetarian meals for plaintiff *is* the alternative

13  to providing halal meats.  Defendants argue that by providing these meals, the DOC is able to meet

14  Muslim religious requirements with its regular food service program, and that it therefore does not

15  incur any increased costs.  This Court concurs that the ovo-lacto vegetarian meal is a reasonable

16  alternative to providing meals including halal meats.

17         While plaintiff asserts that halal meats are a required part of the Muslim diet, the ovo-lacto

18  vegetarian diet does not appear to contain any items that are forbidden by plaintiff's religion.[6]  The

19  Ninth Circuit has recognized that "requiring a believer to defile himself by doing something that

20  _____

21         [6] Plaintiff asserts that the ovo-lacto vegetarian diet is not a reasonable alternative because
    it contains non-halal poultry in the form of eggs.  However, plaintiff provides no evidence that
22  eggs are forbidden by the Quran.  Moreover, even assuming that eggs are forbidden, the vegan
    diet offered by defendants would appear to present a reasonable alternative to the ovo-lacto
    vegetarian diet.

REPORT AND RECOMMENDATION
PAGE -14

01    is completely forbidden by his religion is different from (and more serious than) curtailing various

02    ways of expressing beliefs for which alternatives are available." *Ashelman v. Wawrzaszek*, 111

03    F.3d 674 (9th Cir. 1997).  The ovo-lacto vegetarian diet may fall short of full accommodation of

04    plaintiff's religious dietary requirements, as he interprets them, but it does provide him with a diet

05    which is apparently sufficient to sustain him in good health, and which does not require him to eat

06    any foods which are specifically forbidden by the Quran.  Thus, even if plaintiff truly believes that

07    he is required to eat halal meat as a part of his diet, this Court is satisfied that the ovo-lacto

08    vegetarian diet presents a reasonable alternative.

09            This Court is equally satisfied that substituting kosher meals for ovo-lacto vegetarian meals

10    is not a reasonable alternative.  Not only are kosher meals substantially more expensive than

11    mainline ovo-lacto vegetarian meals, but, as defendant Williams notes in his declaration, "[k]osher

12    requirements are very specialized and far exceed the halal requirements." (Dkt. No. 40, Ex. 2 at

13    3.)  Thus, providing plaintiff with kosher meals would constitute a significant over-accommodation

14    of his right to a diet which meets the requirements of his religion.  Based upon the foregoing, this

15    Court concludes that the fourth *Turner* factor weighs in favor of defendants.

16            As noted above, plaintiff bears the burden of demonstrating that a challenged regulation

17    is invalid.  Plaintiff has not met his burden.  This Court has evaluated the evidence presented by

18    the parties under the test set forth in    *Turner* and, based upon this evaluation, concludes that

19    defendants' decision to deny plaintiff meals containing halal meat as a part of his religious diet or,

20    in the alternative, kosher meals, is rationally related to a legitimate penological purpose.

21    Accordingly, defendants are entitled to summary judgment with respect to plaintiff's First

22    Amendment claim as it pertains to his religious diet.

REPORT AND RECOMMENDATION
PAGE -15

01 *2.     Ramadan 2004*

02      Plaintiff alleges that defendant Haptonstall violated his First Amendment right to free

03 exercise of his religion when she ordered him to eat his evening meal prior to sunset on the first

04 three days of Ramadan 2004.  As explained above, "[i]n order to reach the level of a constitutional

05 violation, the interference with one's practice of religion 'must be more than an inconvenience; the

06 burden must be substantial and an interference with a tenet or belief that is central to religious

07 doctrine.'" *Freeman*, 125 F.3d at 737 (quoting *Graham v. C.I.R.* , 822 F.2d 844, 851 (9th Cir.

08 1987)).

09      Defendants do not dispute that Islamic law requires Muslims to fast during daylight hours

10 for the entire month of Ramadan.  And, in fact, the record reflects that substantial efforts were

11 made by staff at MCC to ensure that inmates who chose to observe Ramadan could participate in

12 a variety of Ramadan activities, including fasting.  While arrangements were made for inmates

13 participating in Ramadan to be called to the dining hall with the last group to eat their evening

14 meal, this arrangement nonetheless resulted in dinner being served prior to sunset.

15      Defendant Haptonstall states in her declaration that she "was under the impression that

16 inmates celebrating Ramadan could eat as close to sunset as possible." (Dkt. No. 39, Ex. 4 at 2.)

17 When it came to her attention, and to the attention of her supervisor, David Sherman, that the

18 arrangements made for the evening meal were not acceptable, they worked to find a solution.  The

19 record reflects that a solution was quickly found and that the timing of the evening meal presented

20 no further problems for the remainder of the month of Ramadan.

21      Plaintiff's assertions to the contrary, there is no evidence in the record that defendant

22 Haptonstall acted intentionally to burden the practice of plaintiff's religion.  The record instead

REPORT AND RECOMMENDATION
PAGE -16

01  supports the conclusion that the issue regarding the timing of the evening meal was, at most, a

02  mistake, and does not rise to the level of a constitutional violation.  Accordingly, defendants are

03  entitled to summary judgment with respect to plaintiff's First Amendment claim as it pertains to

04  fasting during Ramadan 2004.

05                      Religious Land Use and Institutionalized Persons Act

06          Plaintiff also asserts in his complaint that he is entitled to relief under the Religious Land

07  Use and Institutionalized Persons Act.  The RLUIPA, 42 U.S.C. § 2000cc, *et seq.*, provides in

08  relevant part as follows:

> No government, [which is defined to include a State,] shall impose a substantial
> burden on the religious exercise of a person residing in or confined to an institution
> . . . even if the burden results from a rule of general applicability, unless the
> government demonstrates that imposition of the burden on that person . . . is in
> furtherance of a compelling governmental interest and is the least restrictive means
> of furthering that compelling governmental interest.

13  42 U.S.C. § 2000cc-1(a).  The RLUIPA defines "religious exercise" as "any exercise of religion,

14  whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-

15  5(7)(A).

16          A plaintiff bears the initial burden under RLUIPA of demonstrating that the challenged

17  regulation imposes a substantial burden on the exercise of his religious beliefs.  *See Warsoldier*

18  *v. Woodford*, 418 F.3d 989, 994-995 (9th Cir. 2005).  Once the plaintiff makes a prima facie

19  showing that a substantial burden exists, the burden shifts to the government to establish that the

20  challenged regulation furthers a compelling governmental interest and is the least restrictive means

21  of furthering that compelling interest.  *Id*. at 995; *see* 42 U.S.C. §2000cc-2(b).

22          RLUIPA does not define what constitutes a "substantial burden" on religious exercise.

REPORT AND RECOMMENDATION
PAGE -17

01 *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

02 However, the Ninth Circuit has explained that in order for a regulation to impose a "substantial

03 burden," the regulation "must be 'oppressive' to a 'significantly great' extent. That is, a

04 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus

05 upon such exercise." *Id.*

06 **1.    *Religious Diet***

07       Defendants argue that plaintiff has failed to establish that their refusal to provide halal meat

08 as a part of plaintiff's religious diet constitutes a substantial burden on the exercise of his religious

09 beliefs. The Court concurs that plaintiff has not established that defendants' actions imposed a

10 substantial burden on the exercise of his religious beliefs.

11       Plaintiff asserts that the eating of halal meat is required by his religion. Thus, the denial

12 of halal meat may fairly be said to burden in some respect the practice of plaintiff's religion. The

13 question, however, is whether defendants' policy constitutes a *substantial* burden on the exercise

14 of plaintiff's exercise of his religious beliefs. Plaintiff has not established that it does.

15       The ovo-lacto vegetarian diet which is provided to plaintiff does not require him to eat

16 foods which are forbidden by his religion, it simply denies him one component of the diet which

17 he contends should be provided. These facts simply do not satisfy this Court that the denial of

18 halal meat constitutes a *substantial* burden on the exercise of his religious beliefs. This is

19 particularly so given that defendants make a significant effort to provide Muslim inmates such as

20 plaintiff a variety of other ways in which to exercise their religious beliefs as well. Accordingly,

21 defendants are entitled to summary judgment with respect to plaintiff's RLUIPA claim as it

22 pertains to his religious diet.

REPORT AND RECOMMENDATION
PAGE -18

01 **2.   *Ramadan 2004***

02      Defendants also argue in their summary judgment motion that their failure to provide the

03 evening meal after sunset for the first three days of Ramadan in 2004 constitutes a substantial

04 burden on the exercise of plaintiff's religious beliefs.  Just as the Court concludes that the denial

05 of halal meat as a part of plaintiff's religious diet did not impose a substantial burden on plaintiff's

06 exercise of his religious rights, so to must the Court conclude that requiring plaintiff to eat his

07 evening meal before sunset for the first three days of Ramadan 2004 did not impose a substantial

08 burden.  The record makes clear that the issue regarding the timing of the evening meal was

09 acknowledged and resolved quickly once the problem was called to the attention of institution

10 staff.

11      While it is fair to say that the timing of the evening meal for those three days burdened

12 plaintiff's exercise of his religious rights, this temporary problem did not constitute a *substantial*

13 burden.  Accordingly, defendants are entitled to summary judgment with respect to plaintiff's

14 RLUIPA claim as it pertains to Ramadan 2004.

15                                          Equal Protection

16      Plaintiff also alleges that his Fourteenth Amendment right to equal protection was violated

17 by defendants' conduct.  Plaintiff asserts that defendants are discriminating against him by

18 providing Jewish inmates kosher food in accordance with the tenets of their religion and denying

19 plaintiff either halal meats or kosher meals in accordance with the tenets of his religion.

20      In order to state an equal protection claim under § 1983, a plaintiff must show that the

21 defendants acted with an intent or purpose to discriminate against the plaintiff based upon

22 membership in a protected class.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

REPORT AND RECOMMENDATION
PAGE -19

01      While plaintiff makes clear that he would *prefer* that his religious diet contain meat (*see*

02  Dkt. No. 48 at 23), he fails to demonstrate that defendants acted with any discriminatory intent

03  or purpose in designating the ovo-lacto vegetarian diet as the diet to be provided to Muslim

04  inmates.  Defendants have offered evidence in support of their motion for summary judgment

05  which demonstrates that the decision to offer Muslim inmates an ovo-lacto vegetarian diet is

06  motivated by efficiency and cost considerations and not by an intent to discriminate.  (*See* Dkt.

07  No. 39, Ex. 7.)  Defendants have also offered evidence that the ovo-lacto vegetarian diet is

08  consistent with the tenets of Islam, at least in the view of some religious experts.  (*See* Dkt. No.

09  40, Ex. 2 at 3; Dkt. No. 39, Ex. 6; Dkt. No. 39, Ex. 5, Attachment B.)

10      Plaintiff makes no showing that defendants have violated his right to equal protection.

11  Accordingly, defendants are entitled to summary judgment with respect to plaintiff's Fourteenth

12  Amendment claim as well.

13                                    Qualified Immunity

14      Defendants assert in their motion for summary judgment that all of plaintiff's claims are

15  barred by the doctrine of qualified immunity.  Qualified immunity protects § 1983 defendants

16  performing discretionary functions from liability for civil damages so long as their conduct does

17  not violate a clearly established constitutional or statutory right of which a reasonable person

18  would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

19      In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court clarified the test to be applied

20  in evaluating claims of qualified immunity.  The threshold inquiry in a qualified immunity analysis

21  is whether the facts alleged, when taken in the light most favorable to the party asserting the

22  injury, show that the defendant's conduct violated a constitutional right.   *Id*. at 201.  If the

REPORT AND RECOMMENDATION
PAGE -20

01 reviewing court concludes that no constitutional right was violated by the defendant's conduct,

02 the court need not inquire further. *Id.* However, if the reviewing court concludes that a

03 constitutional right was violated, the court must then determine whether the right was clearly

04 established. *Id.* And, "[t]he relevant, dispositive inquiry in determining whether a right is clearly

05 established is whether it would be clear to a reasonable officer that his conduct was unlawful in

06 the situation he confronted." *Id.* at 202.

07        This Court is not satisfied that defendants' conduct violated plaintiff's constitutional or

08 statutory rights. However, even if the district court were to conclude that plaintiff has alleged

09 sufficient facts to establish such violations, defendants would still be entitled to summary

10 judgment.

11        There can be no doubt that the rights to free exercise of religion and to equal protection

12 are clearly established. Likewise, the law is clear that under RLUIPA, no government may impose

13 a substantial burden on the religious exercise of an individual confined to an institution. However,

14 the United States Supreme Court has made clear that the test of "clearly established law" is not

15 to be applied at this level of generality. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

16 In *Anderson*, the Court explained that

17        [T]he right the official is alleged to have violated must have been 'clearly established'
       in a more particularized, and hence more relevant, sense: The contours of the right
18        must be sufficiently clear that a reasonable official would understand that what he is
       doing violates that right. This is not to say than an official action is protected by
19        qualified immunity unless the very action in question has previously been held
       unlawful . . . but it is to say that in light of pre-existing law the unlawfulness must be
20        apparent.

21 *Anderson*, 483 U.S. at 640 (citations omitted).

22        Plaintiff fails to establish that the specific right which he espouses; *i.e.*, the right to a

REPORT AND RECOMMENDATION
PAGE -21

01 religious meal which includes meat, is clearly established.  And, in fact, defendants have provided

02 the Court with authority which reveals that courts which have dealt with the issue have, by and

03 large, supported the provision of vegetarian diets for Muslim diets.  *See Williams v. Morton*, 343

04 F.3d 212 (3d Cir. 2003) (provision of vegetarian diets to Muslim inmates was based on legitimate

05 penological interests and did not violate First or Fourteenth Amendments); *Kahey v. Jones*, 836

06 F.2d 948 (5th Cir. 1988) (prisons are not required to respond to particularized religious dietary

07 requests); *Hudson v. Maloney*, 326 F. Supp. 2d 206 (D. Mass. 2004)(granting qualified immunity

08 to officials who did not provide halal meat as a part of Muslim religious diet).

09     This Court is satisfied, based upon the record before it, that a reasonable prison official

10 could have concluded that an ovo-lacto vegetarian diet was sufficient to meet Muslim dietary

11 requirements.  Accordingly, to the extent defendants' actions can be found to have violated the

12 First and/or Fourteenth Amendments, and/or RLUIPA, defendants are entitled to qualified

13 immunity.

14 <u>Pendent State Law Claims</u>

15     Plaintiff alleges in his complaint that the conduct of defendants not only violated federal

16 law, but violated state law as well.  The Supreme Court has stated that federal courts should

17 refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial.

18 *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Because defendants are entitled to

19 summary judgment with respect to each of plaintiff's federal constitutional claims, plaintiff's state

20 law claims should be dismissed.

21 <u>CONCLUSION</u>

22     For the reasons set forth above, this Court recommends that defendants' motion for

REPORT AND RECOMMENDATION
PAGE -22

01  summary judgment be granted, and that plaintiff's complaint and this action be dismissed with

02  prejudice.  A proposed order accompanies this Report and Recommendation.

03          DATED this  17th  day of March, 2006.

04

05                                              Mary Alice Theiler
                                                United States Magistrate Judge

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -23